**WO**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ervin Rogers,<br>Petitioner,<br>vs.<br>Louis W. Winn, Jr.,<br>Respondent. | No. CIV 12-871-TUC-FRZ (LAB)<br>**REPORT AND RECOMMENDATION** |

On November 26, 2012, Ervin Rogers, an inmate confined in the Federal Correctional Institution in Tucson, AZ, filed a Petition for Writ of Habeas Corpus pursuant to Title 28, United States Code, Section 2241. (Doc. 1); *but see Hunter v. U.S. Parole Com'n,* 2011 WL 4528469 (M.D.Pa.2011) (A petitioner whose sentence was imposed by the Superior Court of the District of Columbia must proceed pursuant to 28 U.S.C. 2254.). Rogers claims the U.S. Parole Commission's decision to deny him parole violated procedural due process and "ex-post factor law." *Id*.

Pursuant to the Rules of Practice of this court, this matter was referred to Magistrate Judge Bowman for report and recommendation. LRCiv 72.2(a)(2).

The Magistrate Judge recommends the District Court, after its independent review of the record, enter an order denying the petition on the merits.

Summary of the Case

Rogers was convicted in the Superior Court of the District of Columbia of first degree felony murder. (Doc. 9, p. 11) On August 19, 1993, the trial court imposed a sentence of imprisonment of twenty years to life. *Id*. At that time, parole decisions were made by the District of Columbia Board of Parole. *Hunter v. U.S. Parole Com'n*, 2011 WL 4528469, *2, n. 5 (M.D.Pa. 2011).

District of Columbia inmates were subsequently transferred to the BOP pursuant to the Revitalization Act of 1997. *Hunter* at *7, n. 7; D.C.Code § 24-101. "Thus, as the BOP was vested with the legal custody of D.C.Code offenders, they too are subject to the disciplinary regulations of the BOP." *Hunter* at *7, n. 7. The respondents concede that under the old D.C. Bureau of Prison regulations, inmates were entitled to counsel at disciplinary hearings. The BOP does not grant inmates this right.

At about the same time, parole jurisdiction passed from the District of Columbia Board of Parole to the U.S. Parole Commission (USPC). *Hunter* at *2, n. 5; D.C.Code § 24-131. To avoid ex-post facto concerns, the USPC employs the old 1987 D.C. parole scoring system for certain inmates, such as Rogers. *See Sellmon v. Reilly*, 551 F.Supp.2d 66 (D.D.C. 2008).

On November 30, 2011, Rogers received his first parole hearing from the U.S. Parole Commission (USPC). (Doc. 9, p. 19) In accordance with the D.C. Parole Board 1987 regulations, information about Roger's pre-incarceration status, his offense, and his post-incarceration behavior was entered into an numerical calculation to guide the parole determination. (Doc. 9, p. 17).

First, Roger's Salient Factor Score was determined from his prior convictions, his prior commitments of more than 30 days, his age at the time of the offense, his recent commitment free period, his institutional status at the time of the offense, and his opiate dependence. (Doc. 9, p. 17). His Salient Factor Score was determined to be 4, which put Rogers in the Risk Group: Moderate. (Doc. 9, p. 18) Rogers does not dispute that determination.

This Risk Group finding was then incorporated into Rogers's guideline point score, which was used to inform the ultimate parole determination. The "Moderate" finding resulted in a +2 addition to Rogers's guideline point score. (Doc. 9, p. 18) An additional +1 point was

added for both Type of Risk and Negative Institutional Behavior. (Doc. 9, p. 18) Rogers's Negative Institutional Behavior point resulted from his 33 DHO (discipline hearing officer) level infractions, 16 of which occurred within 12 months of the hearing. (Doc. 9, p. 15) Rogers's total guideline point score was + 4. (Doc. 9, p. 18) Parole ordinarily is denied if the total point score is 3-5. (Doc. 9, p. 18) Rogers was not granted parole. (Doc. 9, p. 19)

In his petition, Rogers argues the USPC violated his rights under the Due Process Clause and the Ex-Post Facto Clause by considering disciplinary infractions adjudicated under the BOP regulations rather than the old D.C. Department of Corrections regulations. (Doc. 1) Specifically, he argues he was not given the right to be represented by an attorney at his disciplinary hearings as the old D.C. regulations allowed. (Doc. 1, p. 4)

Rogers also notes in his petition that the BOP allows ten days to file an appeal, while the D.C. regulations allowed only 3 days. *Id.* The court assumes Rogers is simply highlighting a difference between the two regimes and not complaining that the BOP gives him extra time to appeal.

Discussion

A procedural due process claim "hinges on proof of two elements: (1) a protected liberty or property interest and (2) a denial of adequate procedural protections." *Pinnacle Armor, Inc. v. U.S.*, 648 F.3d 708, 716 (9th Cir. 2011). "In the parole context, a prisoner alleging a due process claim must demonstrate the existence of a protected liberty interest in parole, and the denial of one or more of the procedural protections that must be afforded when a prisoner has a liberty interest in parole." *Rosenkrantz v. Marshall*, 444 F.Supp.2d 1063, 1077 (C.D.Cal. 2006). A constitutionally protected liberty interest in parole will be found if the statutory scheme uses mandatory language that creates a presumption that parole will be granted if certain designated findings are made. *Id.*

In this case, Rogers's claim fails at the outset because he has no constitutionally protected liberty interest in parole or the parole scoring system. *Ellis v. District of Columbia*, 84 F.3d 1413, 1419-20, 318 U.S.App.D.C. 39, 45-46 (C.A.D.C. 1996); *Hunter v. U.S. Parole*

*Com'n*, 2011 WL 4528469, *1, *7 (M.D.Pa. 2011). The D.C. parole scheme does not employ mandatory language. Instead, it grants the parole board discretion to determine an inmate's eligibility for release. It therefore creates no liberty interest upon which to base a procedural due process claim. *Ellis*, 84 F.3d at 1419-20, 318 U.S.App.D.C. at 45-46; *Fisher v. Fulwood*, 774 F.Supp.2d 54, 58 (D.D.C. 2011).

To guide its parole determination, the USPS considered disciplinary infractions that had been adjudicated under BOP regulations rather than under the old D.C. Department of Correction regulations. This did not violate due process, however, because there is no liberty interest in parole under D.C. law. *See Olim v. Wakinekona*, 461 U.S. 238, 250, 103 S.Ct. 1741, 1748 (1983) (Where inmate had no liberty interest in remaining in Hawaii prison, the failure to comply with prison regulations requiring a particular kind of hearing before transfer did not violate due process.); *see also Hunter v. U.S. Parole Com'n*, 2011 WL 4528469, 7 (M.D.Pa. 2011) ("Since the procedures employed by BOP disciplinary proceedings fully satisfy due process requirements, reliance on the outcomes of those proceedings is fully justified by parole adjudicators."). Rogers argues in the alternative that the change in his procedural rights constitutes a violation of the Ex Post Facto Clause.

"The Ex Post Facto Clause of the United States Constitution prohibits enactments which, by retroactive operation, increase the punishment for a crime after its commission." *Parks v. Fulwood*, 2011 WL 9522695, 2 (C.D.Cal. 2011). "The U.S. Supreme Court has held that a retroactively applied parole regulation or guideline violates the Ex Post Facto Clause if it creates a significant risk of a longer period of incarceration than under the earlier rule." *Id.*

In this case, Rogers fails to explain why the BOP's failure to grant him counsel at his disciplinary hearings creates a significant risk that he will remain incarcerated for a longer period of time. If he were granted access to counsel he might accrue fewer disciplinary infractions, he might not get a +1 Negative Institutional Behavior point, and he might be granted parole earlier. This series of conjectures, however, is pure speculation, and pure speculation is insufficient to establish a violation of the Ex Post Facto Clause. *See Peugh v. U.S.*, 133 S.Ct. 2072, 2082 (2013).

RECOMMENDATION

The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an order Denying the petition for writ of habeas corpus. (Doc. 1)

Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 14 days of being served with a copy of this report and recommendation. If objections are not timely filed, they may be deemed waived. The Local Rules permit a response to an objection. They do not permit a reply to a response.

DATED this 28th day of April, 2014.

Leslie A. Bowman

Leslie A. Bowman
United States Magistrate Judge